RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0206P (6th Cir.)
File Name: 03a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

HDM FLUGSERVICE GMBH,
　　　　*Plaintiff-Appellant,*

　　　*v.*　　　　　　　　　　　No. 01-3918

PARKER HANNIFIN
CORPORATION,
　　　　*Defendant-Appellee.*

—————————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-02180—Ann Aldrich, District Judge.

Argued: December 3, 2002

Decided and Filed: June 19, 2003

Before: GUY and BOGGS, Circuit Judges; EDMUNDS,
District Judge.*

—————————————

**COUNSEL**

**ARGUED:** Scott L. Davis, GARDERE & WYNNE, Dallas,
Texas, for Appellant. Don Swaim, KERN & WOOLEY,
Irving, Texas, for Appellee. **ON BRIEF:** Scott L. Davis,

———————————
*The Honorable Nancy G. Edmunds, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

James P. Reid, GARDERE & WYNNE, Dallas, Texas,
Andrew S. Pollis, HAHN, LOESER & PARKS, Cleveland,
Ohio, for Appellant. Don Swaim, KERN & WOOLEY,
Irving, Texas, Anne Owings Ford, JONES, DAY, REAVIS
& POGUE, Cleveland, Ohio, for Appellee.

—————————————

**OPINION**

—————————————

NANCY G. EDMUNDS, District Judge. This case arises
out of an accident that occurred in September, 1998. HDM
Flugservice GmbH ("HDM"), Appellant, was taxiing one of
its Bell 412 helicopters from its hanger at the Nürnberg
airport when the wheeled landing gear's aft cross tube sheared
off at the left mounting bracket. The rear of the helicopter fell
to the ground, causing damage to the helicopter's fuselage,
frame and systems in addition to damaging the wheeled
landing gear itself. HDM sued Parker Hannifin Corporation
("Parker"), Appellee and manufacturer of the landing gear, for
(1) common law strict liability; (2) statutory products liability;
(3) breach of express warranty; (4) breach of implied warranty
of merchantability; (5) breach of implied warranty of fitness
for a particular purpose; (6) negligence; and (7) negligent
misrepresentation.

The district court granted Parker's motion for summary
judgment, holding that the Ohio courts would apply the
economic loss doctrine to bar some of HDM's tort claims and
that HDM failed to establish a genuine issue of material fact
as to its express warranty and negligent misrepresentation
claims. For the reasons set forth below, we affirm.

**I.**

Plaintiff/Appellant HDM Flugservice GmbH ("HDM")
provides aviation services for hospitals in Germany. HDM
has a fleet of Bell 412 helicopters it uses to provide its
services. German aviation regulations require a certain

clearance level for the tail rotor of air ambulance helicopters. This uniform standard ensures the safe landing of all helicopters used in air ambulance services at Germany's various health care facilities.

On standard Bell 412 helicopters, the tail rotor does not meet the German uniform required standard. Defendant/Appellee Parker Hannifin Corp. ("Parker") designed and manufactured wheeled landing gear that raised the Bell 412 helicopters' tail rotors to a sufficient height under the German uniform standard. When HDM negotiated with Bell Helicopter Textron ("Bell") for helicopters, HDM specified that the helicopters should include Parker's wheeled landing gear assembly. Accordingly, the purchase agreement between HDM and Bell included various customized items, including "wheel landing gear." The cost for the landing gear was included in the total purchase price of the helicopters. HDM and Parker did not enter a written contract.

In September of 1998, HDM was taxiing one of its Bell 412 helicopters from its hanger at the Nürnberg airport when the wheeled landing gear's aft cross tube sheared off at the left mounting bracket. The accident caused damage to the helicopter's fuselage, frame and systems in addition to damaging the wheeled landing gear itself. At the time of the accident, HDM had used the aft cross tube for fewer than 3,500 flight hours. Prior to HDM's purchase of the helicopters, HDM's personnel had reviewed portions of Parker's maintenance manual relating to the wheeled landing gear assembly, including those portions relating to the service life of the wheeled landing gear's aft cross tube.

## II.

After the accident, HDM sued Parker. HDM's complaint included seven causes of action: (1) common law strict liability; (2) statutory products liability; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness for a particular

purpose; (6) negligence; and (7) negligent misrepresentation. The district court granted summary judgment for Parker on all of HDM's causes of action.

Under each cause of action, HDM sought recovery for the cost of repairs to the helicopter, the expense of leasing a replacement helicopter, the costs of replacement and spare parts, the emergency response expenses associated with the accident, the expenses associated with repairing the wheeled landing gear assemblies on HDM's other Bell 412 helicopters, and lost profits.

The district court decided that Ohio courts would apply the economic loss doctrine, which prevents parties from recovering purely economic loss in most tort actions, to HDM's claims for strict liability, and implied warranty.[1] The court also ruled that HDM's damages were economic damages, which led the court to summarily dismiss HDM's strict liability, implied warranty, negligence, and statutory product liability claims. Finally, the court held that HDM failed to produce evidence sufficient to establish its negligent misrepresentation or express warranty claims. HDM appeals each of these conclusions.

## III.

### A.  Standard of Review

The Court reviews a district court's grant of summary judgment *de novo*, using the same standard employed by the district court. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 307-08 (6th Cir. 2001). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

---

[1]HDM conceded that the economic loss rule applied to its negligence claim.

### B. Ohio's Application of the Economic Loss Rule to Strict Liability and Implied Warranty Causes of Action[2]

Generally, damages may be characterized as either personal injury, property damage, or economic damage.

> "Personal injury" is, of course, self-explanatory. "Property damage" generally connotes either damages to the defective product itself or damages to other property. "Economic loss" is described as either direct or indirect. "Direct" economic loss includes the loss attributable to the decreased value of the product itself. Generally, this type of damages encompasses "the difference between the actual value of the defective product and the value it would have had had it not been defective." It may also be described as "the loss of the benefit of the bargain...." "Indirect" economic loss includes the consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and the resulting lost profits.

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 629 (Ohio 1989) (internal citations omitted). The economic loss rule prohibits purchasers of products from recovering purely economic damages under most tort theories. *See* Steven C. Tourek et al., *Bucking the "Trend": the Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation*, 84 Iowa L. Rev. 875, 875-76 (1999); Am. Jur. 2d § 1912.

The economic loss rule, in some form, is the rule in the majority of jurisdictions. *See* Christopher Scott D'Angelo, *The Economic Loss Doctrine: Saving Contract Warranty Law*

---

[2]The district court conducted a choice of law analysis, concluding that Ohio law applies to this case. Neither party appeals that aspect of the district court's decision.

*From Drowning in a Sea of Torts*, 26 U. Tol. L. Rev. 591 (1995) (including an appendix charting the adoption of the economic loss rule by state). The United States Supreme Court has expressly adopted the economic loss rule in admiralty cases. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986) ("a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself"). That holding has been cited by this circuit and others to support a more general application of the doctrine. *See, e.g., Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043 (6th Cir. 1992); *Hutton v. Deere & Co.*, 210 F.3d 389 (10th Cir. 2000); *King v. Hilton-Davis*, 855 F.2d 1047 (3rd Cir. 1988).

In this diversity case between Parker and HDM, our task is to determine the most likely disposition of the issue under Ohio law. *Bailey v. V&O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Ohio developed its approach to the economic loss rule in two major stages. Ohio initially rejected the rule and allowed tort recovery for economic losses. *See Inglis v. Am. Motors Corp.*, 209 N.E.2d 583 (Ohio 1965); *Iacono v. Anderson Concrete Corp.*, 326 N.E.2d 267 (Ohio 1975). Then, in *Chemtrol*, the Ohio Supreme Court limited its previous holdings by applying the economic loss rule to parties in privity of contract, stating:

> a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damages to other property the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.

537 N.E.2d at 635. Thus, if the parties have a contractual relationship, they may not sue in strict liability or implied warranty for their economic damages, but instead must rely

on the Uniform Commercial Code's ("U.C.C.") contractual remedies.[3]

The *Chemtrol* Court expressly declined to consider whether the economic loss rule should also apply to parties lacking privity, but cast doubt on previous Ohio Supreme Court holdings allowing such recovery:

> Accordingly, we also need not reconsider the question whether, absent privity of contract, a plaintiff can recover purely economic losses under tort theories. While *Inglis* and *Iacono* held that such a plaintiff could recover, those decisions relied upon *Santor*, which has subsequently come to represent the minority view and has been the subject of substantial criticism.

*Id.* at n.7. Thus although the Ohio Supreme Court did not explicitly reconsider or overrule its previous decisions permitting recovery for economic losses by a party lacking privity, the court implied there was considerable doubt whether those decisions would be reaffirmed in a future case.

The district court found, based on the cautionary dicta in *Chemtrol*, that parties lacking privity might be subject to the economic loss rule under some circumstances and that commercial parties lacking privity, as opposed to non-commercial parties, would be foreclosed from recovering economic losses. We agree. *See Midwest Ford, Inc. v. C.T. Taylor Co.,* 694 N.E.2d 114 (Ohio Ct. App. 1997); *Trgo v. Chrysler Corp.,* 34 F. Supp. 2d 581 (N.D. Ohio 1998); *King v. Hilton-Davis,* 855 F.2d 1047 (3rd Cir. 1988); *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 489 A.2d 660 (N.J. 1985). *But see Ohio Dep't of Admin. Serv. v. Robert P. Madison Int'l, Inc.,* 741 N.E.2d 551 (Ohio Ct. App. 2000)

---

[3]The *Chemtrol* decision held that implied warranty claims and strict liability claims are treated identically under the economic loss rule. 537 N.E.2d at 632.

(holding that commercial purchasers should not be distinguished from non-commercial purchasers).

Among commercial parties, the U.C.C. provides a comprehensive scheme for parties to recover their economic losses. *See Spring Motors,* 489 A.2d at 671. Permitting commercial parties to recover economic losses in tort would "allow a purchaser to reach back up the production and distribution chain, thereby disrupting the risk allocations that have been worked out in the transactions comprising the chain." *King,* 855 F.2d at 1054. Moreover, policies underlying Ohio's strict liability are forcing manufacturers to internalize and redistribute the cost of injuries because they are in the best position to do so and relieving average consumers of the "burden" of proving negligence. *See Midwest Ford,* 694 N.E.2d at 119. These policies do not favor allowing commercial parties to recover their economic losses. *Cf. Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845 (6th Cir. 2002) (predicting that under Kentucky law, the economic loss rule would apply to commercial transactions regardless of privity).

Application of the economic loss rule in the commercial transaction at issue here forces HDM to resort to contract law to recover its economic losses and thus gives the parties the benefit of their bargain. Accordingly, we affirm the district court's conclusion that the economic loss doctrine applies to HDM's claims for strict liability and implied warranty.

### C. Characterization of the Damage to the Helicopter

Although the economic loss rule prevents commercial plaintiffs from recovering under most tort theories for purely economic damages, the rule does not prevent recovery for damage to property other than the defective product. *See Chemtrol,* 537 N.E.2d at 629. Similarly, Ohio's product liability statute prohibits recovery for economic damages but allows recovery for damage to property other than the product itself. *See LaPuma v. Collinwood Concrete,* 661 N.E.2d 714

(Ohio 1996). Furthermore, in a negligence suit, damage to the defective product can be characterized as property damage or economic damage, and purchasers can recover damage to the defective product if it is characterized as property damage.

### 1. Statutory Product Liability Claim and Tort Claims

Ohio's product liability statute only permits recovery for "harm," Ohio Rev. Code § 2307.73(A)(2), defined as "death, physical injury to person, serious emotional distress, or physical damage to property other than the product involved. Economic loss is not 'harm'." Ohio Rev. Code § 2307.71(G). Economic loss is defined as "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product involved and nonphysical damage to property other than that product. Harm is not 'economic loss'." Ohio Rev. Code § 2307.71(B). Furthermore, when the economic loss rule applies, a plaintiff may not recover in most tort theories when its damages are purely from harm to the product itself. *Chemtrol*, 537 N.E.2d at 635. HDM contends that it may recover damages from harm to the helicopter because the helicopter is separate property from the landing gear.

The district court properly rejected HDM's argument by focusing on HDM's underlying transaction. *See Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 926 (5th Cir. 1987); *King v. Hilton-Davis*, 855 F.2d 1047 (3rd Cir. 1988); *S.N.A., Inc. v. Hartzell Propeller, Inc.*, No. 95-1397, 1996 WL 283646 (E.D. Pa. May 29, 1996). When a purchaser negotiates the purchase of a product, and that product fails to meet expectations, the economic loss rule and Ohio's product liability statute limit the purchaser to its contract remedies. If the purchaser were allowed to sue component manufacturers for the damage to the integrated product, the purchaser would be able to circumvent the economic loss rule by recovering in tort instead of being limited to contract remedies. As the United States Supreme Court noted in *East River,* almost every mechanical device has components. 476 U.S. at 867.

Indeed, a mechanical device, such as a helicopter, is merely many components assembled into a finished product. When the product malfunctions, the cause will almost always be a component. If the Ohio courts were to hold that a component is "other" property from the integrated product, it would allow purchasers to circumvent the economic loss rule in almost every case. Preventing a commercial buyer from recovering the damage to the product from the component manufacturer in tort comports with the policy behind prohibiting a purchaser recovering in tort for the product itself.[4]

### 2. Negligence Claim

In a negligence suit, Ohio law recognizes that damage to the product itself can be either economic damage or property damage. *Chemtrol*, 537 N.E.2d at 629. The Ohio Supreme Court has observed:

> For an ordinary consumer, i.e., one not in privity of contract with the seller or manufacturer against whom recovery is sought, an action in negligence may be an appropriate remedy to protect the consumer's property interests. However, where the buyer and seller are in privity of contract, and they have negotiated that contract from relatively equal bargaining positions, the parties are able to allocate the risk of all loss, including loss of the subject product itself, between themselves.

*Id.* at 631.

---

[4]HDM's reliance on *Ferro Corp. v. Blaw Knox Food & Chemical Equipment Co.*, 700 N.E.2d 94 (Ohio Ct. App. 1997), is inapt. That case is not analogous, because the purchaser there sued the manufacturer and assembler of 90% of the finished product, arguing that it should recover for harm to a damaged component. In the present case, HDM sued the component manufacturer and argues that it should recover for harm to the finished product. Moreover, the decision is of limited precedential value since the court did not provide reasoning for its decision, and held merely that more factual development was warranted.

HDM argues on appeal that *Chemtrol* supports its position that damage to the landing gear should be recoverable in tort. Since it is not in privity with Parker, HDM claims that the circumstances of its case "are exactly the type that the Ohio Supreme Court in *Chemtrol Adhesives* envisioned would be recoverable under a negligence claim involving a defective product." HDM overstates the similarities between this case and that described in *Chemtrol*. Even though HDM did not negotiate with Parker for risk of loss, it did negotiate with Bell, and the agreement with Bell included the landing gear. HDM was in a position to allocate the risk of loss of the landing gear, unlike a consumer purchasing a product from a store, who does not negotiate warranties or allocate the risk of loss. Therefore, as to HDM's negligence claim, the harm to the landing gear itself is economic harm, not property damage, so the claim is barred.[5]

### D. Negligent Misrepresentation

HDM has been inconsistent in articulating the substance of its claim for negligent misrepresentation. Its complaint included the following allegations:

43. Parker made material representations to HDM that the wheeled landing gear assemblies were fit for supporting the normal payload of Bell 412 helicopters under ordinary and normal use. The wheeled landing gear assemblies, however, were not fit for supporting the normal payload of Bell 412 helicopters under ordinary and normal use.

44. Parker made these misrepresentations in the course of its business operations and/or in a transaction in which

[5]HDM also contends that since the product defect in this case posed an unreasonable risk of harm, Ohio courts would permit a negligence claim. *Chemtrol* mentions this theory in passing, but the Ohio Supreme Court has not held that an unreasonable risk of harm creates an exception to the analysis set forth above. *See Chemtrol*, 537 N.E.2d at 635.

it had a pecuniary interest. Parker supplied this misleading and false information for the guidance of HDM and others in their business.

45. Parker did not exercise reasonable care or competence in communicating the information about the fitness of the wheeled landing gear assemblies.

Parker originally sought summary judgment on the negligent misrepresentation claim because of the mistaken belief that the economic loss rule prohibits recovery for any type of tort claim, including negligent misrepresentation. HDM correctly responded that the economic loss rule does not apply to claims for negligent misrepresentation. *See McCarthy, Lebit, Crystal & Haiman Co. v. First Union Mgmt, Inc.*, 622 N.E.2d 1093, 1105-06 (Ohio Ct. App. 1993). In its reply brief, Parker conceded that the economic loss rule does not apply to HDM's negligent misrepresentation claim. Also in its reply brief, Parker argued for the first time that "[i]t is presumed that Plaintiff's negligent misrepresentation case is based on the 3000 [sic] hour maximum service life contained in the Parker maintenance manual. Plaintiff has presented no evidence the 3000 [sic] maximum hour service life is false or incorrect."[6] HDM then filed a sur-reply requesting additional time to respond to Parker's negligent misrepresentation argument. The district court granted HDM's request. HDM subsequently filed a brief in which it specified three theories of negligent misrepresentation: (1) false representation of the time life of the aft cross tube; (2) negligent misrepresentation that visual inspection of the aft cross tube was sufficient; and (3) negligent misrepresentation that acceptable maintenance of the landing gear included use of ProSeal brand adhesive. Notably absent is the theory that HDM stated in its complaint.

[6]At various points in the pleadings and briefs, the parties mistakenly refer to a 3,000 hour service life. The maintenance manual states the aft cross tube has a 3,500 hour service life.

**1.    Parker's Failure to Argue the Specific Grounds for Negligent Misrepresentation Pled in HDM's Complaint**

HDM argues that Parker did not challenge the negligent misrepresentation claim as stated in the complaint, and therefore it was not required to respond to that basis of negligent misrepresentation in order to sustain its claim.

As an initial matter, we must determine whether HDM's argument is properly before this court in light of HDM's failure to raise this argument in the district court. "It is well settled that, absent exceptional circumstances, a court of appeals will not consider an argument by an appellant that was not presented to or considered by the trial court." *Anderson v. Mrs. Grissom's Salads, Inc.*, No. 99-5207, 2000 WL 875365, at *3 (6th Cir. June 19, 2000). While HDM did not argue before the district court that Parker misconstrued and unduly limited HDM's negligent misrepresentation claim, the district court noted in its opinion that it was aware of HDM's allegation in the complaint, and aware that Parker did not address that allegation in its motion for summary judgment. Therefore, the district court did consider the issue and it is properly before this Court on appeal.

As to the merits of HDM's argument, HDM had the burden to articulate and provide evidentiary support for all its claims for negligent misrepresentation. By failing to bring forth any evidence supporting the complaint's allegations in its opposition to summary judgment, HDM failed to meet its burden to show any genuine issue of material fact. To survive summary judgment, a party must do more than rest on its pleadings; it must produce affirmative evidence supporting its allegations. *See Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). This HDM failed to do.

**2.    Service Hours for the Aft Cross Tube**

Ohio law states as follows in defining the tort of negligent misrepresentation: "One who, in the course of his business,

profession or employment...supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Sindel v. Toledo Edison Co.*, 622 N.E.2d 706, 710 (Ohio Ct. App. 1993) (quoting Restatement of Law, Torts 2d § 522 (1977)).

The maintenance manual, on the page titled "Airworthiness Limitations," states as follows: "§ 1.4.1 *General Information*: Mandatory landing gear component replacement times, expressed in flight hours, are as specified below. Upon reaching these service life limits, the components must be replaced with an airworthy part prior to further flight." Section 1.4.3 provides that the Service Life-Hours of the Aft Cross Tube is 3,500. HDM argues that the service life stated in the manual was a material representation that the aft cross tube would last a minimum of 3,500 hours.

The district court correctly held that HDM failed to establish a genuine issue of material fact as to whether Parker's representation of the service life was negligent. There is no reasonable argument that the section of the manual titled "*AIRWORTHINESS LIMITATIONS*" states a minimum life expectancy, as opposed to the maximum life expectancy, of a component. The first paragraph of the section explains that the service hours lists are "mandatory landing gear component replacement times." The specified service life hours, therefore, clearly establish the maximum flight hours a component can be used before it must be replaced, not the minimum number of hours that the component can be used.[7]

---

[7] HDM's reliance on an FAA communication requesting a meeting with Parker regarding the service hours is misplaced. The district court properly observed that "there is no evidence of the results of their questioning, and in particular, no evidence that their concerns regarding the service life of the landing gear were justified." Therefore, the district

### 3.    Visual Inspection of the Aft Cross Tube

HDM argues Parker negligently misrepresented in its maintenance manual that visual inspections of the aft cross tube were sufficient to detect damage. In support of its argument, HDM sought to introduce evidence that Parker issued a mandatory service bulletin requiring users of Parker's landing gear to perform a high frequency eddy current inspection of the aft cross tube in addition to visual inspections. HDM contends that the service bulletin tacitly admits that Parker's previous representation regarding the adequacy of visual inspections was false.

Fed. R. Evid. 407 provides:

When, after an inquiry or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

HDM argues that the service bulletin is not precluded by the rule because the rule only excludes voluntary remedial measures and Parker did not voluntarily issue the bulletin. Assuming that Rule 407 excludes only voluntary remedial actions, HDM has not provided evidence showing that the service bulletin was not voluntary. In fact, the evidence shows just the opposite. In a letter from Otto Miller, Project Engineer for Parker, to the FAA dated January 8, 2001, Mr. Miller stated that Parker generated the service bulletin and

court properly granted summary judgment.

requested the FAA's approval of the bulletin. Mr. Miller also stated that "[i]n conjunction with [the occurrence involving HDM's helicopter], and in the interest of safety to all Owner/Operators of the Wheeled Landing Gear Kit, we have generated a Service Bulletin...." Mr. Miller's letter does not indicate that the service bulletin was issued in response to a mandatory request by the FAA.

HDM also claims error in the district court's sua sponte exclusion of the evidence. However, courts may exclude evidence sua sponte. *See United States v. Mendez-Ortiz*, 810 F.2d 76 (6th Cir. 1986) (holding that court's failure to exclude evidence sua sponte was not plain error, implying that courts have the authority to exclude evidence on their own motion). *See also Maddox v. Patterson*, 905 F.2d 1178, 1180 (8th Cir. 1990) ("[i]t is clearly within the trial court's discretion to exclude evidence sua sponte"). Therefore, the court did not err by excluding the evidence without objection from either party.

### 4.    Sealant

HDM seeks to show that Parker negligently misrepresented that HDM could use "ProSeal" adhesive, rather than "Magnabond" adhesive in the maintenance of the landing gear. During discovery, HDM learned that Parker planned to defend itself by arguing HDM caused the landing gear's malfunction by using ProSeal when it should have used Magnabond. In its briefs opposing the motion for summary judgment, HDM added the argument that, assuming *arguendo* HDM's use of ProSeal contributed to the accident, Parker misrepresented the fact that HDM could use ProSeal safely on Parker's product. HDM, while arguing grounds for its negligent misrepresentation claim that were not contained in its complaint, has never formally moved to amend its complaint. The district court refused to allow HDM to amend its complaint to include this additional basis for negligent misrepresentation.

District courts have discretion whether to allow a party to amend a complaint. *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999). This Court reviews for abuse of discretion. *Id.* Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

> Although the decision to permit amendment to a complaint after an answer has been filed is committed to the discretion of the trial court, the thrust of Rule 15 is that cases should be tried on their merits rather than the technicalities of pleadings. Abuse of discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent.

*Jet,* 165 F.3d at 425 (internal citations omitted).

In this case, the district court did not abuse its discretion by refusing to allow HDM to amend its complaint. The district court expressly considered likelihood of prejudice to Parker if it allowed HDM to pursue this new ground for one of its causes of action after the close of discovery and when it is at odds with the claims in the complaint. Accordingly, the district court's grant of summary judgment on the negligent misrepresentation claim is affirmed.

**E. Express Warranty**

HDM's final argument on appeal is that the district court erred by granting Parker summary judgment on HDM's express warranty claim. HDM contends that the statement of service life hours in the maintenance manual created an express warranty that the aft cross tube would last at least 3,500 hours.

Ohio law defines an express warranty as follows:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation of promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Ohio Rev. Code § 1302.26(A).

"It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty...." Ohio Rev. Code § 1302.26(B).

The statement of service life hours in Parker's maintenance manual does not create an express warranty that the part will last a minimum of 3,500 hours for the same reasons it did not create a negligent misrepresentation of minimum life expectancy. Accordingly, we affirm the district court's grant of summary judgment on HDM's express warranty claim.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.