**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0046n.06**
**Filed: January 18, 2006**

**No. 04-3862**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALL ERECTION & CRANE RENTAL CORPORATION, | ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| ACORDIA NORTHWEST, INC., and SWETT & CRAWFORD, INC., | ) ) ) | |
| Defendants-Appellees. | ) ) ) | |
| _____ | ) | |

BEFORE: SILER and GRIFFIN, Circuit Judges; and TARNOW, District Judge.[*]

PER CURIAM.

Plaintiff All Erection & Crane Rental Corporation ("All Crane") appeals a summary judgment entered in the district court in favor of defendants Acordia Northeast, Inc. ("Acordia"), and Swett & Crawford ("S&C"). All Crane's complaint, filed originally against Acordia, S&C, and Royal Surplus Lines Insurance Company ("Royal"), arose from the cancellation of an insurance policy purchased by All Crane.[1] All Crane first asserts that the district court improperly granted

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]All Crane's complaint also originally listed Acordia employees Bette Gillum and Ronald Lenart and S&C employee William Trumblower individually. All Crane does not list them as

summary judgment on its negligence claims. Second, All Crane contends that the court incorrectly

held that defendants owed no fiduciary duty to All Crane. Third, All Crane assigns error to the

district court's grant of summary judgment in favor of defendants on its claim for breach of the duty

of good faith and fair dealing. Finally, All Crane argues that summary judgment was unwarranted

on its claims of fraud, misrepresentation, and civil conspiracy. For the reasons set forth below, we

affirm.

I.

Plaintiff All Crane is an Ohio corporation engaged in the business of renting large

construction cranes. In or around 1998, All Crane contracted with Acordia, a New Jersey retail

insurance broker, to seek out potential insurance carriers capable of offering two-year coverage

commitments.[2] Acordia, in turn, retained S&C, a Pennsylvania partnership, to serve as the

intermediary broker.[3] Acordia and S&C selected Royal as a suitable insurance provider for All

Crane. The parties' communications between one another thereafter operated as follows: All Crane

---

appellees in this appeal.

[2]Acordia is an independent retail insurance agency, which aids clients in obtaining insurance from carriers. Acordia is not an insurance carrier. Retail brokers are not permitted to directly obtain quotes from surplus line insurers, like Royal. Thus, retail brokers like Acordia must contact a wholesale broker like S&C, which is capable of approaching the "surplus" market to obtain insurance rate quotes.

[3]S&C is an independent wholesale insurance broker, which is capable of securing quotations from "surplus carriers." A "surplus carrier" is not licensed to issue insurance in Ohio and generally writes insurance for high-risk accounts like those arising in the crane industry. Surplus carriers typically do not have direct contact with retail brokers, like Acordia, and choose instead to work through wholesale brokers like S&C.

dealt with Acordia, Acordia interacted with S&C, and S&C dealt with Royal. No contractual relationship existed between All Crane and S&C.

Royal provided a policy of commercial liability insurance coverage to All Crane effective from March 25, 1998, to March 25, 1999 (hereinafter "the 1998 Policy"). Included among the policy's provisions was the following:

> SECOND YEAR RATE GUARANTEE ENDORSEMENT. It is hereby agreed and understood that if the loss ratio at anniversary on an incurred basis exceeds 100%, the policy is subject to anniversary rerating with an increase in rate not to exceed 25%.

The 1998 Policy likewise contained the following provision governing "cancellation" of the policy:

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
>
> a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
>
> b. [60] days before the effective date of cancellation if we cancel for any other reason.[4]

In an effort to restructure All Crane's insurance program, Acordia and All Crane entered into a Risk Management Service Agreement ("RMSA") on January 28, 1999. In doing so, Acordia agreed to administer All Crane's property and casualty coverages. The RMSA expressly noted that Acordia was to pay "particular attention" to "multi-rate guarantees and structuring the proper coverages to address [All Crane's] exposure to loss." For this effort, Acordia earned the monthly

---

[4]The cancellation provision was modified by a Cancellation Amendment, which extended the notice period from thirty to sixty days.

sum of $10,000, with the possibility of earning an additional $10,000 "for negotiating a two-year

rate guarantee."

Royal thereafter issued a second general liability insurance policy to All Crane, with

coverage beginning on March 25, 1999, and ending on March 25, 2000 (hereinafter "the 1999

Policy"). Like its predecessor, the 1999 Policy included a second-year guarantee endorsement with

the following similar language:

> SECOND YEAR RATE GUARANTEE ENDORSEMENT. It is hereby agreed and
> understood that if the loss ratio at anniversary on an incurred basis exceeds 60%, the
> policy is subject to anniversary rerating with an increase in rate not to exceed 25%.

Also, like the 1998 Policy, the 1999 Policy included an identical cancellation provision.

In early 2000, discussions regarding a renewal policy began between Acordia, S&C, and

Royal. In furtherance of those negotiations, Royal sought updated loss information from All Crane

during the years 1996 and 1997. Armed with only "some" of the updated information, Royal

informed S&C that it did not intend to renew the 1999 Policy because of losses it had experienced

while insuring All Crane for the years 1998 and 1999. When All Crane thereafter learned of Royal's

decision from Acordia, All Crane responded with its belief that the "Second Year Rate Guarantee

Endorsement" obligated Royal to offer a renewal policy for the year 2000 at a premium rate not to

exceed a twenty-five percent increase over the 1999 rate.

A conference call between Acordia, S&C, and Royal then took place on January 27, 2000,

in an effort to resolve All Crane's insurance situation.[5] Several options were apparently discussed,

---

[5]An Acordia representative recorded the call.

including the possibility of renewing the policy and then cancelling it, thereby allowing Acordia the time to find a replacement carrier for All Crane. The call ended without a resolution on how to proceed.

In or around February 2000, Acordia representatives again spoke with members of Royal's management and, after some discussion, Royal issued a new policy with coverage beginning on March 25, 2000, and terminating on March 25, 2001 ("the 2000 Policy"). Like its predecessors, the 2000 Policy contained a sixty-day cancellation provision. Unlike Royal's prior policies, continued coverage pursuant to the 2000 Policy was conditioned on Royal's ability to review the totality of the losses incurred by All Crane's predecessor insurance company, AIG, for the 1996-1997 period.[6]

On or around May 23, 2000, Royal finally received the updated 1996-1997 loss information. After reviewing the information, Royal learned that All Crane's loss values were substantially worse than expected. Thus, on May 25, 2000, Royal cancelled the policy and informed S&C. After Acordia informed All Crane, All Crane requested an explanation for the cancellation. Acordia relayed that request to S&C, which thereafter forwarded the request to Royal. By letter dated June 20, 2000, Royal indicated that it cancelled the 2000 Policy because the 1996 and 1997 loss information "presented a drastically different and greatly inflated loss picture." The letter further

---

[6]Specifically, Royal addressed a letter to Acordia on April 18, 2000, indicating as follows:

Please be advised that this policy was bound subject to currently valued loss runs for 1996 & 1997 and the most recent audited financial statements, which, I don't believe we have received. Please forward them to my attention as soon as possible. Our underwriter advised if they do not receive them by 5/12/00, legal notice of cancellation will be sent.

noted that "the insured's loss profile has continued to deteriorate, consistent with the loss information that was not supplied early on in the relationship. Consequently, we need to recognize that the pricing structure in place cannot support the exposure potential." Pursuant to the terms of the cancellation provision, Royal continued to insure All Crane until the expiration of sixty days on July 27, 2000.

On May 25, 2001, All Crane filed suit in the Northern District of Ohio against Acordia, S&C, Royal, and Ron Lenart, an Acordia employee. The complaint alleged counts of negligence against all defendants, breach of fiduciary duty against Acordia and S&C, breach of contract against Royal, breach of the duty of good faith and fair dealing against all defendants, civil conspiracy against all defendants, fraud against all defendants, fraudulent misrepresentation against all defendants, and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") against all defendants. Defendants Royal and Acordia sought dismissal of the presented claims via motion on August 1, 2001.[7]

In response, the district court issued an order dated November 4, 2002, granting in part and denying in part defendants' motion. Specifically, the court dismissed All Crane's negligence and RICO claims noting that, with regard to its negligence claim, All Crane claimed purely economic damages against parties with whom it had a contractual relationship. Thus, the court concluded, "[b]ecause Ohio law prohibits economic recovery when the parties are in privity of contract, Plaintiff

---

[7]Defendant Royal filed the motion to dismiss, and Acordia filed a motion to join Royal's motion, which the court granted.

may not maintain its negligence claim." The court thereafter dismissed All Crane's civil RICO claims noting that, to establish a civil RICO claim, a plaintiff must show (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity. In this case, according to the court, All Crane's complaint failed even to address each of the prerequisite elements necessary to state a claim for civil RICO. The court did, however, conclude that All Crane stated claims for breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, civil conspiracy, fraud and fraudulent misrepresentation.

After conducting discovery, the parties filed cross-motions for summary judgment on September 29, 2003. Thus, specifically pending before the court were (1) All Crane's motion for partial summary judgment on its breach of contract claim against Royal, (2) S&C's motion for summary judgment, (3) Royal's motion for summary judgment, and (4) Acordia's motion for summary judgment.

In response, the court issued an order dated April 9, 2004, granting summary judgment in favor of All Crane on its breach of contract claim against Royal.[8] The court likewise entered summary judgment in favor of Acordia and S&C, thereby eliminating the balance of All Crane's claims. First, in response to All Crane's negligence claim against S&C, the court concluded that "All Crane has not come forth with any evidence establishing that S&C caused any harm to All

---

[8]The court also granted in part and denied in part Royal's motion for summary judgment, thus leaving a portion of All Crane's claims intact. Accordingly, the court initially set the matter for trial. Following the entry of summary judgment on this count, however, All Crane settled its breach of contract claim against Royal.

Crane." Moreover, the court again concluded that All Crane's damages allegations comprised solely economic damages and, although All Crane and S&C lacked contractual privity, the court held that "commercial parties lacking privity are subject to the economic loss rule."

The court then discussed All Crane's claims against Acordia and S&C for breach of fiduciary duty. Noting that All Crane failed to respond to Acordia's and S&C's arguments that their relationship with All Crane was nothing more than an ordinary business relationship, the court granted summary judgment in favor of Acordia and S&C. In response to All Crane's breach of the duty of good faith and fair dealing claims, the court highlighted that both Acordia and S&C contend that "they are each entitled to summary judgment on this claim because under Ohio law, this duty only arises between an insurer and its insured, and only where there is an underlying contract between the parties." After noting that, again, All Crane had failed to respond to such arguments, the court found Acordia's and S&C's position was well-supported and therefore granted summary judgment to them on All Crane's breach of good faith and fair dealing claims.

Moving next to All Crane's civil conspiracy claim, the court agreed with Acordia and S&C that All Crane's claim failed to set forth the requisite elements; in particular, the existence of an underlying unlawful act. The court noted that All Crane asserted the breach of the insurance contract as an underlying unlawful act which, as to Acordia, "cannot form the basis of a conspiracy claim[.]" As for S&C, the court held that, as a non-contracting party, S&C could not have conspired to breach the contract.

Finally, the court granted summary judgment to S&C and Acordia on All Crane's fraud and fraudulent misrepresentation claims. In doing so, the court observed that "All Crane has not produced any evidence that Acordia knew of, or participated in, Royal's initial decision on January 13, 2000 not to renew the policy." Instead, the court noted, it was Acordia that worked to talk Royal into renewal. According to the court, "[t]hese facts establish that Acordia did not knowingly make any false representations to All Crane." The court thereafter agreed with S&C's arguments that "All Crane's fraud and fraudulent misrepresentation claims fail because S&C never made any representations to All Crane." All Crane declined to provide the court with responsive arguments.

This timely appeal followed.

## II.

We review the district court's entry of summary judgment de novo. *McWane, Inc. v. Fid. & Deposit Co. of Md.*, 372 F.3d 798, 802 (6th Cir. 2004). A district court's interpretation of state law is likewise governed by the de novo standard. *Ferro v. Garrison Ind., Inc*., 142 F.3d 926, 931 (6th Cir. 1998). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (noting that, in deciding a motion for summary judgment, the court must view the evidence and draw all reasonable

inferences in favor of the non-moving party).  We also review a district court's order of dismissal pursuant to FED. R. CIV. P. 12(b)(6) de novo.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

III.

All Crane first argues that the district court erred in granting the motions to dismiss and thereafter entering summary judgment in favor of defendants.  Specifically, it contends that the court improperly limited its discussion solely to the economic loss rule.  Rather than focus solely on the economic loss rule, All Crane urges us to view this case from the perspective of an insurance agent, who owes to its client a duty to exercise good faith and reasonable diligence in undertaking the acquisition of coverage.  From that viewpoint, according to All Crane, it was a negligent breach of that duty for Acordia and S&C to allow a policy renewal problem to develop with Royal.  All Crane further highlights the "pretextual" renewal of its insurance policy, arguing that Acordia, in particular, negligently failed to timely obtain current loss information from All Crane's prior insurer, AIG, "which contributed to Royal cancelling the policy[.]"  At a minimum, All Crane concludes the foregoing arguments create an issue of fact with regard to "the extent and nature of insurance coverage and whether an agent breached any of its duties."  We disagree.

A host of reasons exist to affirm the district court's dismissal of All Crane's negligence claims against Acordia and subsequent award of summary judgment to S&C on All Crane's negligence claims.  As a general matter, it is undisputed that All Crane seeks purely economic damages arising from Royal's mid-term cancellation of the 2000 Policy.  The district court therefore

properly cited and focused on the well-established rule that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989) (internal citation and quotation marks omitted). Although All Crane was not in privity of contract with S&C, whether parties were in privity of contract is relevant only to the extent that at least one litigant is a non-commercial party. *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1029-30 (6th Cir. 2003) (interpreting Ohio's economic loss rule and agreeing that "parties lacking privity might be subject to the economic loss rule under some circumstances and that commercial parties lacking privity, as opposed to non-commercial parties, would be foreclosed from recovering economic losses"). Both S&C and All Crane are commercial parties, as opposed to private consumers, and, as a result, All Crane's remedies are more properly restricted either to a traditional breach of contract claim or, if available, to the remedies provided by the Uniform Commercial Code. *Id.* at 1030; *see Midwest Ford v. C.T. Taylor Co., Inc.*, 694 N.E.2d 114, 118-19 (Ohio Ct. App. 1997) ("As between commercial parties, then, the allocation of risks in accordance with their agreement better serves the public interest than an allocation achieved as a matter of policy without reference to that agreement."). The balance of All Crane's arguments lack merit and, accordingly, the district court properly dismissed All Crane's claims against Acordia and thereafter appropriately entered summary judgment in favor of S&C.

IV.

All Crane also contends that the district court erred by granting summary judgment to Acordia and S&C on its claim for civil conspiracy. All Crane asserts that Acordia and S&C committed the underlying unlawful act of "fraud and/or misrepresentation." For support, All Crane points to portions of a discussion between Royal, S&C, and Acordia during their January 27, 2000, conference call as evidence of the conspiracy.

A civil conspiracy is "the malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). No cause of action for civil conspiracy exists without an underlying unlawful act. *Gosden v. Lewis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996). Indeed, "[t]he element of 'malicious combination to injure' does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Id.* (citation omitted); *see Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993).

In this case, the district court noted that All Crane asserted that the underlying unlawful act was a breach of the insurance contract. Thus, it concluded, "[b]ecause a contract claim cannot form the basis of a conspiracy claim, and because non-contracting parties cannot conspire to breach a contract, Acordia and S&C are entitled to summary judgment on this count." This conclusion is wholly correct. *Wagoner v. Leach Co.*, No. 17580, 1999 Ohio App. LEXIS 3152, *51 (Ohio Ct. App. July 2, 1999) ("[A] party cannot be held liable for conspiring to breach his own contract." (citing *Schell v. Kaiser-Frazer Sales Corp.*, 274 N.E.2d 315, 318 (Ohio Ct. App. 1971))). Although

All Crane re-characterizes the unlawful act for purposes of appeal as "fraud and/or misrepresentation," it declined to draw that distinction below and, accordingly, the argument is waived.[9] The district court therefore properly granted summary judgment to Acordia and S&C on All Crane's civil conspiracy claim.

V.

The balance of All Crane's issues are not properly preserved. Although All Crane asserts error with regard to its claims for breach of fiduciary claim, breach of good faith and fair dealing, fraud, and misrepresentation, the district court properly observed that All Crane's brief in opposition to summary judgment failed to address either Acordia or S&C's arguments with respect to those claims. Accordingly, All Crane has waived its opportunity to raise the appellate arguments it now asserts. *See, e.g., Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("[T]he general rule is that this court will not consider issues not raised in the district court.") (citations omitted); *Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir. 1983) (noting "appellate courts do not consider issues not presented to the district court") (citation omitted).

Affirmed.

---

[9]All Crane's thematic reliance on the parties' tape-recorded conference call is misplaced. Although All Crane infers that S&C and Acordia somehow acted nefariously by merely participating in the call, the record reflects that S&C and Acordia representatives did so in order to ascertain Royal's position on renewing the 1999 Policy. Moreover, the record reflects that Acordia was responsible for All Crane receiving *any* post-1999 insurance coverage whatever.