[Cite as *Motorists Mutl. Ins. Co. v. Ironics, Inc.*, 2020-Ohio-137.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| Motorists Mutual Insurance Company | Court of Appeals No. WD-19-018 |
| Appellee | Trial Court No. 2017CV0431 |
| v. | |
| Ironics, Inc., et al. | |
| Appellants | |
| v. | |
| Mercy Komar, et al. | **DECISION AND JUDGMENT** |
| Third-Party Defendants | Decided: January 17, 2020 |

* * * * *

Merle D. Evans, III, for appellee.

Theodore M. Dunn, for appellant Ironics, Inc.

John Siciliano and John K. Nelson, for appellant Owens-Brockway
Glass Container, Inc.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} This is an appeal from the judgment of the Wood County Court of Common Pleas, granting summary judgment to appellee, Motorists Mutual Insurance Company, in its declaratory judgment action against appellants, Ironics, Inc. and Owens-Brockway Glass Container Inc. Because we find that Ironics is entitled to insurance coverage and a defense, we reverse.

### A. Facts and Procedural Background

{¶ 2} This appeal involves the determination of whether Ironics is entitled to insurance coverage under the terms of an insurance policy issued by Motorists, which contains a Commercial General Liability Coverage Form (the "CGL policy") and a Commercial Umbrella Coverage Form (the "umbrella policy"). Ironics is the insured party under the policy. The relevant background facts set forth herein are taken from stipulations submitted to the trial court by the parties prior to the court's decision granting summary judgment to Motorists.

{¶ 3} During the fall of 2016, Ironics sold tube scale to Owens-Brockway pursuant to three separate purchase orders. Unbeknownst to Ironics, the tube scale, which Ironics had acquired from American Waste Management,[1] contained a large number of chrome RHM stones that were inadvertently mixed into the tube scale by American Waste

---

[1] American Waste Management is not a party to these proceedings.

Management, thereby rendering them nonconforming under the terms of the purchase orders. Owens-Brockway unwittingly incorporated the nonconforming tube scale into its glass products, which rendered the glass bottles unusable. Owens-Brockway discovered the defect prior to placing the bottles into the market. Because the damage done to the bottles is irreversible, Owens-Brockway alleges that it was required to scrap in excess of 1,850 tons of contaminated glass containers.

{¶ 4} As a result of the losses it sustained due to Ironics' supply of nonconforming tube scale, Owens-Brockway asserted a claim against Ironics on January 20, 2017, alleging breach of contract, negligence, U.C.C. violations, and product liability.[2] Thereafter, Ironics referred the matter to Motorists, seeking to obtain defense and liability coverage under the CGL and umbrella policies. On August 28, 2017, Motorists filed a complaint with the trial court, requesting a declaratory judgment that it owes no duty to defend or indemnify Ironics against Owens-Brockway's claims arising out of Ironics' supply of nonconforming tube scale.

{¶ 5} Following pretrial motion practice, the parties each filed motions for summary judgment. Appellants argued that Motorists was obligated to provide liability and defense coverage under the CGL and umbrella policies to cover Owens-Brockway's claim against Ironics. In response, Motorists argued that Owens-Brockway's claim was

[2] Notably, Owens-Brockway has not yet filed suit against Ironics for the recovery of its losses. Thus, we are confined in our analysis to Owens-Brockway's allegations as recited by the parties in their stipulations.

3.

outside the scope of the policies and therefore its liability and defense obligations were not triggered. The trial court ultimately agreed with Motorists, granted Motorists' motion for summary judgment, and denied appellants' motion for summary judgment. Appellants then filed a timely notice of appeal.

## B. Assignments of Error

{¶ 6} On appeal, appellant assigns the following errors for our review:

Assignment of Error No. 1: The trial court committed reversible error by determining that the damages claimed by Owens-Brockway do not constitute "property damage" as that term is defined in the insurance contracts purchased by Ironics.

Assignment of Error No. 2: The trial court committed reversible error by determining that [Ironics'] unintended act of providing allegedly defective tube scale is not accidental in nature and does not constitute an "occurrence" as that term is defined in the insurance contracts purchased by Ironics.

Assignment of Error No. 3: The trial court committed reversible error by determining that Owens-Brockway's claims against Ironics fall within one or more of the exclusions contained in the insurance contracts purchased by Ironics.

Assignment of Error No. 4: The trial court committed reversible error by determining that because insurance coverage has not been

4.

triggered, Motorists has no duty to defend Ironics in any dispute, whether in court or in arbitration, relating to Ironics' sale of tube scale to Owens-Brockway.

{¶ 7} Because all of appellants' assignments of error are interrelated, we will address them simultaneously.

## II. Standard of Review

{¶ 8} "We apply the de novo standard of review to a decision granting or denying a motion for summary judgment based on an insurance contract." *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 12. Under the de novo standard, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment. *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980).

{¶ 9} Summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party. Civ.R. 56; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 10} Here, there is no factual dispute. Indeed, the parties have stipulated to the relevant facts that govern this matter. Thus, the issue in this case is purely one of insurance contract interpretation. "When we face an issue of contractual interpretation,

5.

our role 'is to give effect to the intent of the parties to the agreement.'" *Ohio Northern Univ. v. Charles Constr. Services, Inc.*, 155 Ohio St.3d 197, 2018-Ohio-4057, 120 N.E.3d 762, ¶ 11, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. An insurance contract is reviewed as a whole and we presume that its language reflects the parties' intent. *Id.*, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. A court is to look no further than the contract itself to determine the parties' intent when the written language contained therein is clear. *Id.*

### III. Analysis

{¶ 11} In appellants' assignments of error, they argue that the trial court erred in concluding that Ironics is not entitled to coverage under its CGL and umbrella policies. In response, Motorists contends that the trial court's grant of its motion for summary judgment was proper because appellants cannot establish coverage under the terms of either the CGL policy or the umbrella policy. For ease of discussion, we will begin our analysis by examining appellants' arguments under the CGL policy. We will then examine appellants' arguments under the umbrella policy.

### A. Coverage Under the CGL Policy

{¶ 12} In the coverage section of the CGL policy, the initial grant of coverage is set forth as follows:

> Section I – Coverages
>
> Coverage A Bodily Injury and Property Damage Liability

6.

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.[3]

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory":

* * *

---

[3] These supplementary payments relate to the payment of court costs and associated expenses involved in defending the insured against claims and are not relevant here.

7.

{¶ 13} In Section V of the CGL policy, the terms "occurrence" and "property damage" are defined as follows:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. * * *.

{¶ 14} Reading the foregoing provisions together, Motorists is only obligated under the CGL policy to pay for, and defend against, damages arising out of an accident that causes physical injury to tangible property. We ordinarily look to the allegations contained in the complaint filed against the insured to determine whether the insurance company has a duty to defend arising out an insurance policy. *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 294 N.E.2d 874 (1973), paragraph two of the syllabus. "[W]here the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured." *Id.*

{¶ 15} In this case, Owens-Brockway has not yet filed a complaint against Ironics. However, the parties have stipulated that Ironics delivered nonconforming tube scale to

8.

Owens-Brockway, giving rise to Owens-Brockway's property damage. The parties disagree as to whether Ironics' delivery of nonconforming tube scale constitutes an "occurrence" that caused "property damage," as those terms are defined in the CGL policy. In light of our analysis below, we will not pass upon whether the delivery of nonconforming tube scale constitutes an "occurrence" that caused "property damage" under the CGL policy. Rather, we will assume, for purposes of argument, that the delivery of the tube scale constitutes an occurrence under the initial grant of coverage contained in the CGL policy. Notwithstanding this assumption, Motorists argued, and the trial court found, that Ironics' coverage is excluded under several specific policy exclusions. One such policy exclusion is the contractual liability exclusion, which provides:

{¶ 16} b. Contractual Liability

"Bodily Injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) * * *.

* * *

{¶ 17} According to the parties' stipulations, Owens-Brockway has asserted claims alleging

breach of contract and breach of the warranties contained in the terms and conditions incorporated into the purchase orders based on the delivery of allegedly contaminated tube scale to Owens-Brockway. Owens-Brockway has also asserted claims for negligence, U.C.C. violations and product liability against Ironics based upon the delivery of allegedly contaminated and defective tube scale to its plants.

{¶ 18} Clearly, the contractual liability exclusion excludes insurance coverage for Owens-Brockway's contractual claims (i.e., breach of contract, breach of warranties, and U.C.C. claims). However, appellants argue that the exclusion does not bar coverage for Owens-Brockway's claims for negligence and product liability, which sound in tort and not in contract. According to appellants, Owens-Brockway would be entitled to damages under these claims in the absence of a contract.

{¶ 19} With respect to the tort claims alleged by Owens-Brockway, Motorists argues that such claims are not cognizable under Ohio's economic-loss rule. "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6, citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 45, 537 N.E.2d 624 (1989) and *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 3, 560 N.E.2d 206 (1990).

"'[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Chemtrol* at 44, quoting *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984).

{¶ 20} The economic-loss rule "stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Corporex* at ¶ 6, quoting *Chemtrol* at 42. "'Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.'" *Floor Craft* at 7, quoting *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 374 S.E.2d 55, 58 (Va.1988).

{¶ 21} Regarding product liability claims, the Supreme Court of Ohio has examined the economic-loss rule and stated that

> a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damage to other

property the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.

*Chemtrol* at 51.

{¶ 22} In this case, appellants insist that Owens-Brockway has stated a claim for damages to "other property" by alleging damage, not only to the defective tube scale itself, but also to the final glass product into which the tube scale was integrated. Because the damages encompass property other than the tube scale provided by Ironics, appellants insist that the economic-loss rule does not preclude Owens-Brockway's tort claims.

{¶ 23} In response, Motorists argues that Owens-Brockway's glass product constitutes an integrated product that is not distinct from the tube scale for purposes of the economic-loss doctrine. In support of its argument, Motorists cites *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025 (6th Cir.2003).

{¶ 24} In *HDM Flugservice,* the United States Court of Appeals for the Sixth Circuit examined Ohio's economic-loss rule and held that the plaintiff could not recover in tort for damages to a helicopter that was caused by defective landing gear, because the landing gear was not considered separate from the helicopter. *Id.* at 1030-32. Importantly, the court characterized the landing gear that was affixed to the helicopter as a component material of an integrated final product. The court explained that the cause of a product's malfunction is almost always a component of the product. *Id.* at 1031. As such, the court observed:

12.

If Ohio courts were to hold that a component is "other" property from the integrated product, it would allow purchasers to circumvent the economic loss rule in almost every case. Preventing a commercial buyer from recovering the damage to the product from the component manufacturer in tort comports with the policy behind prohibiting a purchaser recovering in tort for the product itself.

*Id.*

{¶ 25} Relying upon the holding in *HDM Flugservice*, federal district courts in Ohio have similarly concluded that damages to a final integrated product arising out of a defect in one of the product's components do not constitute injury to other property and are thus only recoverable in contract under the economic-loss rule. In *Nationwide Agribusiness Ins. Co. v. CNH America LLC*, N.D.Ohio No. 1:12-cv-01430, 2014 WL 2520502 (June 4, 2014), Nationwide sued CNH America LLC after it was forced to pay an insurance claim totaling $252,075.56 following a fire that destroyed a tractor owned by its insured, Burkhart Farms. Burkhart Farms purchased the tractor from Burkhart Farm Center, Inc., a farm equipment dealer that originally purchased the 2010 Case IH STX485 tractor from CNH. The tractor contained a turbocharger manufactured by Cummins, Inc.

{¶ 26} Following Nationwide's payment of Burkhart Farm's claim under a casualty/property insurance policy, Nationwide filed its complaint in which it asserted claims against CNH and Cummins for negligence, strict liability, and breach of express

13.

and implied warranties. In the complaint, Nationwide alleged that CNH defectively designed and manufactured the tractor and Cummins defectively manufactured, designed, and distributed the tractor's turbocharger.

{¶ 27} Ultimately, CNH and Cummins filed a motion for summary judgment, in which they argued, inter alia, that Nationwide was barred from recovery on its negligence and strict liability claims by Ohio's economic-loss rule. *Id.* at *9. Nationwide argued that the economic-loss rule did not apply because the fire damaged property other than the tractor, namely an in-cab GPS guidance system and an in-cab applicator system, which were purchased separately from the tractor and installed by Burkhart Farms after it purchased the tractor. *Id.* The court examined the "other property" argument raised by Nationwide in light of the holding in *HDM Flugservice* and found that the guidance system and applicator that were installed after the purchase of the tractor were integrated components of the tractor and did not constitute "other property" under the economic-loss rule. *Id.* at *10. Consequently, the court dismissed Nationwide's negligence and strict liability claims under the economic-loss rule. *Id.*

{¶ 28} Having examined the decisions in *HDM Flugservice* and *Nationwide Agribusiness*, we find that the reasoning contained therein is clear and persuasive. Upon our application of the reasoning in these cases to the facts of this case, it is clear that the glass products into which the nonconforming tube scale was incorporated were not "other property" for purposes of the application of the economic-loss rule. Consequently, the

14.

economic-loss rule applies in this case and bars Owens-Brockway's negligence and product liability claims, leaving only the contract-based claims remaining.

{¶ 29} Because the contract claims are excluded under the contractual liability exclusion contained within the CGL policy, we find that Ironics is not entitled to coverage under the CGL policy for the claims asserted by Owens-Brockway arising out of the damage caused by the nonconforming tube scale. Since the CGL insurance coverage is excluded, Motorists is not obligated to defend Ironics against the claims asserted by Owens-Brockway under the CGL policy. *See Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13, citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113, 507 N.E.2d 1118 (1987) ("An insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage.").

### B. Coverage Under the Umbrella Policy

{¶ 30} Having found that Ironics is not entitled to coverage under the CGL policy, we next examine whether any such coverage is available under the commercial umbrella policy. The umbrella policy contains a coverage section that provides, in relevant part:

> A. Insuring Agreement.
>
> We will pay on behalf of the insured the "ultimate net loss":
>
> > a. In excess of the "underlying limit": or
> >
> > b. For an "occurrence" covered by this policy which is either
>
> excluded or not covered by the "underlying insurance";

15.

because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this Coverage Form applies, caused by an "occurrence" anywhere in the world.

{¶ 31} Under this general grant of coverage, Motorists is obligated to pay for Ironics' losses that exceed the policy limits of the CGL policy. Since we have concluded that Ironics is not entitled to coverage under the CGL policy, the umbrella policy's excess coverage provisions are not triggered under these facts. The umbrella policy also provides coverage for Ironics' losses that are attributable to any "occurrence" that causes "property damage" and is either excluded or not covered by the CGL policy.

{¶ 32} The umbrella policy in this case contained a more expansive definition of "occurrence" than did the CGL policy. Under the umbrella policy, "occurrence" is defined in relevant part as "[a]n accident, or a happening or event * * * which results in 'bodily injury' or 'property damage' neither expected nor intended from the standpoint of the insured." The umbrella policy provides a definition of "property damage" that is similar to the CGL policy's definition of "property damage." Under the umbrella policy, "property damage" is defined as follows:

> J. "Property damage" means:
>
> 1. Physical injury to or destruction of tangible property which occurs during the policy period, including all resulting loss of use of that property;

16.

2. Loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an "occurrence" during the policy period.

{¶ 33} As already noted, the definition of "occurrence" in the umbrella policy is broader than that found in the CGL policy. Indeed, an occurrence in the umbrella policy encompasses, among other things, *any* event that results in unintended or unexpected property damage. Ironics' supply of nonconforming tube scale to Owens-Brockway clearly constitutes an "event." Because the parties have stipulated that Ironics was unaware of the nonconforming nature of the tube scale prior to its incorporation into Owens-Brockway's glass products, we find that the property damage related to Ironics' supply of nonconforming tube scale was unintended and unexpected from Ironics' standpoint, thus constituting an "occurrence" as contemplated by the policy language.

{¶ 34} In its brief to this court, Motorists acknowledges the broader definition of "occurrence" contained in the umbrella policy, but nevertheless contends that coverage is unavailable under the umbrella policy because Ironics' supply of nonconforming tube scale did not cause "property damage" under the umbrella policy. Alternatively, Motorists urges that coverage under the umbrella policy is excluded under several policy exclusions.

{¶ 35} Regarding its contention that Ironics' supply of nonconforming tube scale did not cause "property damage" under the umbrella policy, Motorists claims, without referencing any language in the umbrella policy to support its claim, that the definition of

17.

"property damage" requires physical injury to property *other than* the product provided to Owens-Brockway by Ironics. Motorists cites *Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc.*, 876 N.W.2d 72 (Wis.2016), in support of its argument.

{¶ 36} In their brief, appellants respond to Motorists by noting that the term "property damage" is a defined term under the policy, and the policy definition does not include a requirement of physical injury to property other than the insured's property. Further, appellants assert that the physical injury that occurred as a result of Ironics' supply of nonconforming tube scale was not limited to the tube scale itself, but also encompassed Owens-Brockway's glass products into which the tube scale was incorporated.

{¶ 37} Motorists, relying upon *Pharmacal*, challenges appellants' distinction between the nonconforming tube scale and the final integrated glass products, insisting that the glass products should be construed as Ironics' product for purposes of applying the "property damage" definition in the umbrella policy.

{¶ 38} In *Pharmacal*, a retail supplier of dietary supplements agreed to purchase probiotic pills containing a specific type of bacteria (Lactobacillus rhamnosus or LRA) from Pharmacal, a supplement manufacturer. *Id.* at 76. Pharmacal purchased the ingredients for the pills from another company, which had acquired the bacterial component from a separate supplier, before blending the ingredients together and compressing the mixture into chewable tablets. *Id.* Subsequently, it was discovered that

18.

the bacteria incorporated into the tablets was not LRA, which forced the retailer to recall the pills. *Id.* Litigation ensued, and the bacteria supplier's insurance company moved for summary judgment on the issue of coverage. *Id.* at 77. Ultimately, the trial court agreed with the insurer that there was no coverage because there had been no "property damage" within the meaning of the applicable CGL policy. *Id.* The court of appeals reversed, and the Wisconsin Supreme Court granted the insurer's petition for review. *Id.*

{¶ 39} On review before the Wisconsin Supreme Court, the court recited the relevant provisions of the CGL policy at issue, which included a definition of "property damage" similar to the one contained in the umbrella policy in this case. In particular, the policy in *Pharmacal* defined "property damage" to include "[p]hysical injury to tangible property." *Id.* at 79.

{¶ 40} The court began its analysis by articulating the risks intended to be insured by CGL policies, observing that such policies are designed to "'cover the risk that the insured's goods, products, or work will cause bodily injury or damage to property *other than* the product or the completed work of the insured.'" (Emphasis sic.) *Id.* at 80, quoting *Vogel v. Russo*, 613 N.W.2d 177, 182 (Wis.2000). The court then went on to consider whether the incorporation of the incorrect bacteria into the supplement tablets constituted physical injury to tangible property "other than" the bacterial component. *Id.* In addressing that question, the court found that blending the bacteria ingredient together with the other supplement ingredients created an "integrated system," because the ingredients could not be subsequently separated from one another. *Id.* at 82.

19.

{¶ 41} The court noted that it had previously found that "damage by a defective component of an integrated system to either the system as a whole or other system components is not separable as damage to other property for which coverage is provided by a CGL policy," *id.*, citing *Wausau Tile, Inc. v. County Concrete Corp.*, 593 N.W.2d 445, 453-54 (Wis.1999). Based upon its holding in *Wausau Tile*, the court found that the blending of the wrong type of bacteria into the supplement pills did not constitute damage to other property, and therefore concluded that there was no initial grant of coverage under the CGL policy. *Id.*

{¶ 42} While factually similar to this case, *Wisconsin Pharmacal* is nonetheless distinguishable. Notably, the court in *Wisconsin Pharmacal* was tasked with interpreting the term "property damage" within the context of a CGL policy, not an umbrella policy. As is clear from an examination of the Wisconsin Supreme Court's decision in *Pharmacal*, the scope of coverage provided by CGL policies factored heavily on the court's determination that "property damage" was limited to damage to other property. Indeed, the nature of CGL policies and what they typically cover seems to be what motivated the Wisconsin Supreme Court to read the requirement of damage to "other property" into the CGL policy, as that requirement was not contained within the CGL policy's express language.

{¶ 43} Unlike the limited scope of coverage applicable to CGL policies, the umbrella policy in this case is, by its very terms, designed to provide broad coverage for claims that are not otherwise covered by Ironics' CGL policy. In particular, the umbrella

policy in this case obligates Motorists to pay for losses "[f]or an 'occurrence' covered by this policy which is either excluded or not covered by the 'underlying insurance.'" Thus, the more restrictive form of coverage that is typical of a CGL policy like the one at issue in *Pharmacal* is not applicable to an umbrella policy like the one in this case. Given the differences between a CGL policy and an umbrella policy, it would be inappropriate to impose the *Pharmacal* integrated system rule here, especially where the rule itself is not contained in the policy language. Motorists was the drafter of the umbrella policy and, as such, could have included language regarding the integrated product rule from *Pharmacal* in its umbrella policy, but failed to do so. Because the policy at issue here is an umbrella policy that differs in language and scope from a typical CGL policy, we find that *Pharmacal* is inapposite.

{¶ 44} The umbrella policy's definition of "property damage" is straightforward. "Where an insurance policy's provisions are clear and unambiguous, courts must apply the terms as written and may not enlarge the contract by implication to embrace an object distinct from that contemplated by the parties." *Chiquita Brands International, Inc. v. National Union Ins. Co.*, 2013-Ohio-759, 988 N.E.2d 897, ¶ 7 (1st Dist.), citing *Gomolka v. State Auto. Mutual Ins. Co.*, 70 Ohio St.2d 166, 168, 436 N.E.2d 1347 (1982) and *Equity Diamond Brokers, Inc. v. Transnatl. Ins. Co.*, 151 Ohio App.3d 747, 2003-Ohio-1024, 785 N.E.2d 816, ¶ 11 (1st Dist.).

{¶ 45} There is no language in the umbrella policy's definition of "property damage" that excludes physical injury to the insured's tangible property, and we are not

free to read such a limitation into the policy.  Therefore, we reject Motorists' argument that "property damage" cannot exist here simply because physical injury only occurred to Ironics' property.  Instead, we find that the physical injury to Owens-Brockway's glass product, whether such product is determined to be Ironics' property or other property, constitutes "property damage" as that term is defined in the umbrella policy.  Because Ironics' transfer of nonconforming tube scale gave rise to this unintended and unexpected "property damage," the transfer meets the definition of an "occurrence" under the umbrella policy.

{¶ 46} Having concluded that Ironics' transfer of nonconforming tube scale constitutes an occurrence, Ironics is entitled to coverage under the umbrella policy so long as such coverage is not excluded under one of the policy exclusions contained within the umbrella policy.  Motorists cites three such exclusions that it deems applicable to this case, and urges us to find no coverage under the umbrella policy on account of these exclusions.[4]  These exclusions provide as follows:

**B. Exclusions.**

This insurance does not apply to:

* * *

i. "Property damage" to "your product" arising out of it or any part

of it.

---

[4] Notably, the umbrella policy does not contain the same contractual liability exclusion found in the CGL policy.

22.

j. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." * * *

k. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure to by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

{¶ 47} Initially, Motorists contends that the exclusion for property damage to "your product" applies to this case. Relevant here, the umbrella policy defines "your product" as

1. Any goods or products, other than real property, manufactured, sold, handled or distributed or disposed of by:

a. You;

* * * .

{¶ 48} Appellants urge that this exclusion does not apply here because the claims asserted by Owens-Brockway relate to property damage to the glass products, which were not manufactured, sold, handled, or distributed or disposed of by Ironics. On the other hand, Motorists asserts that the "combination of an allegedly defective ingredient with other ingredients constitutes a single integrated product and does not constitute

23.

damage to 'other property.'  In other words, the damage was to the integrated product itself, and not anything else."

{¶ 49} Appellants' argument aligns with the language of the "your product" exclusion in the umbrella policy.  The glass products that were damaged in this case were manufactured by Owens-Brockway, not Ironics.  The glass products merely *contained* the tube scale sold by Ironics.  Motorists insists that the glass products should be viewed as an integrated system and treated as Ironics' product.  In making this argument, Motorists appears to be relying upon the *Pharmacal* decision, which we have already deemed inapposite because the integrated system rule adopted therein does not apply to the umbrella policy in this case.

{¶ 50} Motorists also cites *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.*, 142 F.Supp.3d 556 (N.D.Ohio 2015) to support its claim that the "your product" exclusion applies here.  In *Park-Ohio*, the court held that a "your product" exclusion similar to the one contained in the umbrella policy excluded coverage for property damage to defective washers that were installed in cradles by the cradle manufacturer. Notably, the court in *Park-Ohio* found that the "your product" exclusion was applicable only after noting that "the property damages in this case arose solely from the defect in the washers that [the cradle manufacturer] installed into the cradles.  The washers did not cause damage to any other components or property, and no other defect caused property damage. The defective washers were [the insured's] product." *Id.* at 563.  Because the damage in this case included not only the tube scale provided by Ironics, but also

24.

Owens-Brockway's glass products into which the tube scale was incorporated, *Park-Ohio* is distinguishable from the present case. *Park-Ohio* would be applicable in this case if the cradle manufacturer's claim was for replacement of the entire cradle and not only the defective washer.

{¶ 51} A plain reading of the "your product" exclusion supports appellants' position that the exclusion would only apply to the nonconforming tube scale in this case. Even if we were to conclude that the "your product" exclusion could arguably be interpreted to mean what Motorists claims it means, the exclusion would still not apply, because the Ohio Supreme Court has directed that "[i]f provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus.

{¶ 52} Moreover, "an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). We cannot say that the "your product" exclusion was clearly intended to apply to a claim for damage to Owens-Brockway's glass products. Rather, we find that "your product" means Ironics' product, which in this case is the supplied tube scale. If Motorists wanted "your product" to include any product which contained the integrated tube scale, it could have defined it in such a way as to accomplish that objective. Having failed to do so, it

follows that the direct and concise declarative definition of "your product" here can only mean the nonconforming tube scale. Therefore, we find that the "your product" exclusion does not apply.

{¶ 53} Next, Motorists cites the "your work" exclusion and contends that this exclusion applies "[t]o the extent that Ironics provided any 'work' to Owens-Brockway." The term "your work" is defined in the umbrella policy as follows:

O. "Your work" means:

1. Work or operations performed by you or on your behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in 1. or 2. above.

{¶ 54} Having examined the "your work" exclusion and its definition, we find that this exclusion is patently inapplicable. The claims raised by Owens-Brockway against Ironics stem exclusively from Ironics supply of tube scale to Owens-Brockway. There is no indication that Ironics has performed any work for Owens-Brockway, and Motorists fails to identify any such work.

{¶ 55} Finally, Motorists claims that the "impaired property" exclusion bars any coverage under the umbrella policy. Once again, the term "impaired property" is defined by the umbrella policy, which provides, in relevant part:

26.

E. "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

{¶ 56} Before the trial court, appellants submitted the affidavit of Robert Hippert, the technical capabilities leader for Owens-Brockway, which contains the following testimony:

The glass containers manufactured by Owens-Brockway were physically damaged by the chrome RHM stones in the contaminated tube scale from Ironics. In the manufacturing process, the chrome stones because embedded in the glass containers. * * *

The chrome RHM stones could not be removed from the glass containers, meaning that those containers had incurred permanent physical damage and could not be restored to use by the removal or replacement of the Ironics component product.

{¶ 57} This unrefuted testimony establishes that the incorporation of Ironics' nonconforming tube scale into Owens-Brockway's glass products was an irreversible process. That is, the integration of the tube scale into the other component parts created the finished glass products such that the tube scale could not be removed. At that point, the glass products could not be restored to use by the repair, replacement, adjustment or removal of the tube scale or by Ironics' supply of conforming tube scale. As noted in the parties' stipulations, the incorporation of the nonconforming tube scale into the glass products forced Owens-Brockway to scrap the glass products, precipitating the insurance claim at issue in this case.

{¶ 58} Since the glass products could not be restored to use, they do not fit the definition of "impaired property" under the umbrella policy. Thus, the "impaired property exclusion does not apply.

{¶ 59} Having found that the facts of this case give rise to an initial grant of coverage under the terms of the umbrella policy, and having further determined that none of the umbrella policy's exclusions apply, we conclude that Ironics is entitled to coverage under the umbrella policy. Accordingly, appellants' first three assignments of error are well-taken.

{¶ 60} In appellants' fourth assignment of error, they argue that the trial court erred in finding that Motorists has no duty to defend Ironics in any dispute, whether in court or in arbitration, relating to Ironics' sale of tube scale to Owens-Brockway.

28.

Motorists' obligation to provide a defense under the umbrella policy is contained in the following policy language:

> **Section II – Investigation, Defense, Settlement**
>
> A.  For each "occurrence":
>
> * * *
>
> b. For which damages are sought for "bodily injury," "property damage," "personal injury" or "advertising injury" to which this Coverage Form applies, which are not covered by "underlying insurance" or other insurance:
>
> 1. We have the right and duty to defend any suit against the insured seeking damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this Coverage Form applies, provided such suit is brought in the United States of America, its territories or possessions or Canada.

{¶ 61} We have previously determined that the claims asserted by Owens-Brockway stemming from the incorporation of Ironics' nonconforming tube scale into Owens-Brockway's class products constitute an "occurrence" for which damages are sought for "property damage."  In light of our prior determination that Ironics is not entitled to coverage under the CGL policy, the duty to defend provision within the umbrella policy applies and obligates Motorists to defend Ironics against Owens-Brockway's claims.  Accordingly, appellants' fourth assignment of error is well-taken.

29.

**{¶ 62}** In sum, we find that the trial court properly concluded that Ironics is not entitled to coverage or a defense under the CGL policy because the claims asserted by Owens-Brockway against Ironics are either barred under the CGL policy's contractual liability exclusion or not cognizable pursuant to the economic-loss doctrine. However, we find that the trial court erred in granting summary judgment to Motorists and denying appellants' motion for summary judgment, because Ironics is entitled to coverage and a defense under the terms of the umbrella policy.

## IV. Conclusion

**{¶ 63}** Having found that the trial court erred below, we reverse the trial court's grant of summary judgment in favor of Motorists and its denial of summary judgment against appellants. Pursuant to App.R. 16(B), we order final judgment be entered in favor of appellants consistent with this court's findings. Motorists is hereby ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
                                            JUDGE

Gene A. Zmuda, P. J.
CONCUR.

_____
                                            JUDGE


Christine E. Mayle, J.                    _____
CONCURS, IN PART,                                JUDGE
AND DISSENTS, IN PART.


**MAYLE, J.**

{¶ 64} The majority concludes that Motorists has no duty to defend or indemnify

Ironics under its CGL policy, but must defend and indemnify Ironics under its umbrella

policy. I agree with the majority's ultimate decision to reverse the trial court's judgment

in favor of Motorists (and the trial court's corresponding denial of summary judgment

against appellants) with respect to the umbrella policy, and its order that final judgment

be entered in favor of appellants with respect to those claims and cross-claims that relate

to the umbrella policy. But, I concur in judgment only. That is because I disagree with the majority's view that the relevant coverage provisions of the umbrella policy are somehow more expansive than the CGL policy. I do, however, agree with the majority's analysis of the umbrella policy's exclusions.

{¶ 65} In addition, I believe that Motorists has a clear duty to defend Ironics under its CGL policy. For that reason, I would reverse and order that judgment be entered in favor of appellants with respect to those claims and cross-claims that relate to Motorists' duty to defend Ironics under the CGL policy, but find that a question of fact remains regarding whether Motorists must indemnify Ironics for Owens-Brockway's claims under the CGL policy. Accordingly, I respectfully concur, in part, and dissent, in part.

### I. CGL Policy's Coverage Provisions

{¶ 66} The CGL endorsement provides as follows:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. * * *

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" * * *.

{¶ 67} The definitions section of the CGL endorsement provides:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

17. "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. * * *

{¶ 68} The issue here is whether Ironics may be legally obligated to pay damages to Owens-Brockway for "property damage" caused by an "occurrence," as those terms are defined in the CGL policy. If so, Motorists must defend and indemnify Ironics against Owens-Brockway's claims unless coverage is otherwise prohibited by a specific exclusion.

{¶ 69} It is clear that Owens-Brockway suffered "property damage" as defined in the CGL policy because it incurred "[p]hysical damage to tangible property"—i.e., physical injury to its glass containers. Although Motorists argues that "[t]his definition relates to physical injury to tangible property *other than* the products, goods, service or work provided by the insured," such limitations are not included in the CGL policy's

33.

definition of "property damage." (Emphasis in original.) As the majority correctly recognizes when analyzing a very similar definition of "property damage" contained in the umbrella policy, courts cannot read language into an insurance policy and must apply its express terms as written. "The cardinal rule for applying the terms in an insurance policy is well settled: if the terms in the policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction." *Hartong v. Makary*, 106 Ohio App.3d 145, 149, 665 N.E.2d 704 (9th Dist.1995). Given that Owens-Brockway incurred "physical damage to tangible property"—its glass containers—it incurred "property damage" as that term is clearly and unambiguously defined in the CGL policy.

{¶ 70} In addition, such property damage was caused by an "occurrence," which the policy defines as an "accident." Although the CGL policy does not define "accident," "undefined words in an insurance policy must be afforded their plain and ordinary meaning." *Grange Mut. Cas. Co. v. Rosco*, 146 Ohio App.3d 698, 705, 767 N.E.2d 1225 (7th Dist.2001). "The plain and ordinary meaning of 'accident' is 'an unexpected and undesirable event.'" *Acuity, A Mut. Ins. Co. v. Siding & Insulation Co.*, 2016-Ohio-1381, 62 N.E.3d 937, ¶ 13 (8th Dist.), quoting *Sarrough v. Budzar*, 2015-Ohio-3674, 38 N.E.3d 921, ¶ 24 (8th Dist.). As the majority correctly concludes with respect to the umbrella policy, "[b]ecause the parties have stipulated that Ironics was unaware of the nonconforming nature of the tube scale prior to its incorporation into Owens-Brockway's glass products, we find that the property damage related to Ironics' supply of

34.

nonconforming tube scale was unintended and unexpected from Ironics' standpoint, thus constituting an 'occurrence' as contemplated by the policy language." I believe that this reasoning applies with equal force to the definition of "occurrence" under the CGL policy. That is, the record reflects that the presence of the chrome RHM stones in the tube scale that Ironics sold to Owens-Brockway was "an unexpected and undesirable event" from the standpoint of the insured. Even Motorists' complaint for declaratory judgment recognizes that "Ironics was not aware that the subject tube scale had been contaminated with the chromite sand * * *."

{¶ 71} Accordingly—unless coverage is otherwise expressly excluded—the CGL policy requires Motorists to defend and indemnify Ironics for those sums that Ironics becomes legally obligated to pay as damages to Owens-Brockway because of the property damage it suffered.

## II. CGL Policy's Exclusions

{¶ 72} Motorists alleges that any liability coverage provided by the CGL policy is excluded by its business risks exclusions, namely (1) the contractual liability exclusion; (2) the "your product" exclusion; (3) the "your work" exclusion; and (4) the "impaired property" exclusion. In Ohio, insurance policy exclusions must be interpreted "'as applying only to that which is *clearly* intended to be excluded.'" (Emphasis in original.) *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 33, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992).

35.

**{¶ 73}** The "your product," "your work," and "impaired property" exclusions (and related definitions) of the CGL policy are identical in all material respects to the "your product," "your work," and "impaired property" exclusions (and related definitions) of the umbrella policy. Thus, I believe that these exclusions do not preclude coverage under the CGL policy for the reasons stated by the majority when analyzing the nearly-identical exclusions of the umbrella policy.

**{¶ 74}** The majority, however, concludes that coverage is precluded by the contractual liability exclusion of the CGL policy. That exclusion provides as follows:

"Bodily Injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion for damages does not apply for damages:

*That the insured would have in the absence of the contract or agreement*; * * * (Emphasis added.)

**{¶ 75}** The majority frames its analysis of this exclusion around the common-law economic loss rule, as articulated by the Supreme Court of Ohio in *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 45, 537 N.E.2d 624 (1989). *Chemtrol*, however, addressed "the precise question" of whether economic loss may be recovered in tort "where the parties *are* in privity of contract." (Emphasis in original.) *Id.* at 49. In contrast, the issue before the court is whether Ironics could be liable to Owens-Brockway for physical damage to its glass containers even if the parties *were not* in privity of contract. Given that appellants argue that Ironics would be liable under the Ohio Product

36.

Liability Act, R.C. 2307.71 et seq., for product liability damages even if Ironics and Owens-Brockway were not in privity of contract, the court should have analyzed whether Owens-Brockway can assert a product liability claim under the Ohio Revised Code. This is especially so given that the Ohio Product Liability Act expressly "abrogate[s] all common law product liability claims or causes of action." R.C. 2307.71(B).

{¶ 76} The Ohio Product Liability Act provides that a manufacturer is liable for compensatory damages based on a "product liability claim" if (1) the product in question was "defective" in some way, (2) the defect was the proximate cause of harm for which the claimant seeks to recover compensatory damages, and (3) the manufacturer "designed, formulated, produced, constructed, created, assembled, or rebuilt * * *" the product that caused the harm. R.C. 2307.73(A). A "product liability claim" is defined by R.C. 2307.71(A)(13) as a claim that seeks compensatory damages for

death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following: (a) [t]he design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) [a]ny warning or instruction, or lack of warning or instruction, associated with that product; [or] (c) [a]ny failure of that product to conform to any relevant representation or warranty.

{¶ 77} Although the majority did not analyze Owens-Brockway's claims under the Product Liability Act, given its conclusion that "the glass products into which the

37.

nonconforming tube scale was incorporated were not 'other property' for purposes of the application of the economic-loss rule," I believe that it would similarly conclude that Owens-Brockway does not allege "physical damage to property other than the product in question" as required for a statutory "product liability claim" under R.C. 2307.71(A)(13). And I would disagree.

{¶ 78} In my view, the majority reached its conclusion based on a misunderstanding of the so-called "integrated system rule" as applied by the federal Sixth Circuit in *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025 (6th Cir.2003). As stated in *HDM Flugservice*, the integrated system rule provides as follows:

> If the purchaser were allowed to sue component manufacturers for the damage to the integrated product, the purchaser would be able to circumvent the economic loss rule by recovering in tort instead of being limited to contract remedies. * * * Indeed, a mechanical device, such as a helicopter, is merely many components assembled into a finished product. When the product malfunctions, the cause will almost always be a component. If the Ohio courts were to hold that a component is "other" property from the integrated product, it would allow purchasers to circumvent the economic loss rule in almost every case. Preventing a commercial buyer from recovering the damage to the product from the

38.

component manufacturer in tort comports with the policy behind

prohibiting a purchaser recovering in tort for the product itself.

*Id.* at 1031.

{¶ 79} In other words, because the economic loss rule prevents tort recovery for damage to *the product itself*—a concept that is fully incorporated into the Ohio Product Liability Act's definition of "product liability claim" under R.C. 2307.71(A)(13)[5]—it would circumvent the economic loss rule to allow *purchasers of an integrated product* to sue a component manufacturer because its component allegedly damaged the integrated product that was purchased by the plaintiff.

{¶ 80} For example, in *HDM Flugservice*, the purchaser of a helicopter—i.e., an integrated product that included many components, including landing gear—could not circumvent the economic loss rule by suing the manufacturer of a particular component of that product (i.e., the landing gear) that allegedly caused the helicopter to crash and be destroyed. Likewise, in *Nationwide Agribusiness Ins. Co. v. CNH America LLC*, N.D.Ohio No. 1:12-cv-01430, 2014 WL 2520502 (June 4, 2014), the purchaser of a tractor—i.e., an integrated product that included many components, including a

---

[5] In addition, the Act defines "economic loss" as "direct, incidental, or consequential pecuniary loss, including, but not limited to, *damage to the product in question*, and nonphysical damage to property other than that product. Harm is not 'economic loss.'" (Emphasis added.) R.C. 2307.71(A)(2). Moreover, "economic loss" is recoverable under R.C. 2307.79 only if the claimant can otherwise recover compensatory damages for a "product liability claim"—which, again, requires "physical damage to property other than the product in question." R.C. 2307.71(A)(13).

turbocharger—could not circumvent the economic loss rule by suing the manufacturer of a particular component of that product (i.e., the turbocharger) that allegedly caused the tractor to catch fire and be destroyed.

{¶ 81} Under Ohio law, the integrated product rule might have some applicability in this case if someone else (say, "Company Z") had purchased a glass container from Owens-Brockway, the glass container shattered, and then Company Z attempted to sue Ironics because its component (the tube scale) had caused the glass container to shatter and be destroyed. If that were the case, Company Z would not be alleging "physical damage to property other than *the product in question*" as required by R.C. 2307.71(A)(13) because, in that situation, "the product in question"—i.e., the glass container that Company Z purchased—would be the integrated product itself. (Emphasis added.)

{¶ 82} But here, the integrated product rule has no applicability because "the product in question" is the allegedly-defective *tube scale*—not the glass containers. In other words, unlike the plaintiffs in *HDM Flugservice* and *Nationwide Agribusiness*, Owens-Brockway did not purchase an integrated product. Rather, it purchased allegedly-defective raw material (tube scale) for use as a component ingredient in the manufacture of glass containers, which caused physical damage to Owens-Brockway's other property when it was used to manufacture those glass containers.

{¶ 83} Moreover, the Ohio Product Liability Act expressly recognizes that "raw materials" are "products" for purposes of a "product liability claim." That is, the Act

40.

defines "product" as "any object, substance, mixture, *or raw material* that constitutes tangible personal property * * *" and that satisfies all of the following: (1) "[i]t is capable of delivery itself, or as an assembled whole in a mixed or combined state, *or as a component or ingredient*[;]" (2) "[i]t is produced, manufactured, or supplied for introduction into trade or commerce[;]" and (3) "[i]t is intended for sale or lease to persons for commercial or personal use." (Emphasis added.) R.C. 2307.71(A)(12)(a).

{¶ 84} The statute does not define "raw material." When a term is undefined, we give the term its "plain and ordinary meaning." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17, citing *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70, 525 N.E.2d 1386 (1988). "And when interpreting the language of a statute, '[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage.'" *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8, quoting R.C. 1.42. According to common usage, "raw material" is "crude or processed material that can be converted by manufacture, processing, or combination into a new and useful product * * *." *Merriam-Webster's Collegiate Dictionary* 970 (10th Ed.1996). The tube scale that Owens-Brockway purchased from Ironics was "raw material" that was (1) delivered to Owens-Brockway "as a component or ingredient" for its glass containers, (2) manufactured for introduction into trade or commerce, and (3) sold to Owens-Brockway for commercial use. Thus, the tube scale is a "product" for purposes of a product liability claim under Ohio law.

41.

{¶ 85} Finally, in my view, Owens-Brockway has asserted a product liability claim against Ironics that, if successful, would not be excluded by the contractual liability exclusion of its CGL policy. Under R.C. 2307.73(A), a manufacturer is subject to liability for compensatory damages based on a "product liability claim" if (1) the "product" in question was defective in some way, including but not limited to "defective in manufacture or construction"; (2) the defect was "a proximate cause of harm for which the claimant seeks to recover compensatory damages"; and (3) the manufacturer "designed, formulated, produced, constructed, created, assembled, or rebuilt" the "product" in question. Moreover, a product is "defective in manufacture or construction" if, "when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." R.C. 2307.74.

{¶ 86} Although no formal complaint has been filed yet, the parties' written stipulation provides that Owens-Brockway purchased tube scale from Ironics, and then used the tube scale to manufacture glass containers. Subsequently, Owens-Brockway discovered that the glass containers contained a large number of RHM stones, which required Owens-Brockway to scrap in excess of 1,850 tons of glass containers and incur various damages. Regarding Owens-Brockway's theories of liability, the stipulation expressly provides that:

42.

- Owens-Brockway alleges that the stones came from contaminated tube scale supplied by Ironics, and, as such, the subject tube scale was defective.

- Owens-Brockway alleges Ironics failed to meet the specifications required in the purchase orders from Owens-Brockway.

{¶ 87} So, in addition to alleging that Ironics failed to meet the specifications of the parties' written contract, Owens-Brockway also alleges that the RHM stones "contaminated" the tube scale, which caused it to be "defective." To me, this sufficiently alleges that the tube scale was "defective in manufacture or construction" under R.C. 2307.74, meaning that Ironics would be liable if—even in the absence of the parties' contract—Owens-Brockway establishes that the tube scale "deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." R.C. 2307.74. In my view, the trial court record is not fully developed on this issue. That is, the record does not clearly establish whether the tube scale deviated from any design specifications, formula, or performance standards *of Ironics*, or whether the tube scale that Ironics sold to Owens-Brockway deviated from "identical units" that it manufactured to those same standards. Therefore, I do not believe that summary judgment is warranted in favor of either party on the claims and cross-claims relating to Motorists' duty to indemnify Ironics under the CGL policy.

43.

{¶ 88} But, "[a]n insurer's duty to defend is broader than and distinct from its duty to indemnify." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19, citing *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382, 59 N.E.2d 199 (1945), paragraph one of the syllabus. "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage." *Id.,* citing *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984). "However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." *Id.,* citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113, 507 N.E.2d 1118 (1987).

{¶ 89} Here, although there is a question of fact as to whether the contractual liability exclusion of the CGL policy precludes coverage for whatever damages Ironics may become liable to pay to Owens-Brockway, Motorists has a clear duty to defend Ironics under the CGL policy given the broad nature of Owens-Brockway's allegations, which include a product liability claim under Ohio law.

{¶ 90} For these reasons, I respectfully concur, in part, and dissent, in part.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.